# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

WALLACE T. ROBINSON                                                              PLAINTIFF
ADC #169328

v.                                   4:20-cv-00392-BSM-JJV

SHIRLEY WILSON, *et al*                                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court<br>
Eastern District of Arkansas<br>
600 West Capitol Avenue, Suite A149<br>
Little Rock, AR 72201-3325

## **DISPOSITION**

### I.   INTRODUCTION

Wallace T. Robinson ("Plaintiff") is currently incarcerated at the Tucker Unit of the Arkansas Department of Correction and filed this action *pro se* pursuant to 42 U.S.C. § 1983. (Doc. No. 2.) During the events that gave rise to this lawsuit, Plaintiff was confined at the Cummins Unit of the ADC. He alleges during an infirmary visit for elevated blood pressure Defendant Wilson, a nurse, wrapped a telephone cord around his neck and applied pressure to prevent him from breathing. (*Id*. at 4.) He further alleges Defendant Merrill attempted to block the video camera so the incident could not be recorded. (*Id*.) Plaintiff filed a grievance about the conduct of Defendants Wilson and Merrill (collectively "Defendants"); the grievance was found to have merit. (*Id*. at 11.) Plaintiff seeks damages for the alleged violations of his rights.[1] (*Id*. at 6.) I note that Plaintiff's claims in this case are identical to his claims in *Robinson v. Straugn, et al*, 5:19cv00010 DPM/JJV (E.D. Ark Aug., 2019), which was dismissed because Plaintiff failed to exhaust his administrative remedies.

---

[1] Plaintiff's claims against Defendant Wellpath and the official capacity claims against Defendants Wilson and Merrill were dismissed earlier. (Doc. No. 11.)

Defendants have filed a Motion for Summary Judgment. (Doc. No. 15.) Plaintiff has responded (Doc. No. 22) and this matter is now ripe for a decision. After careful review, and for the following reasons, I find Defendants' Motion for Summary Judgment should be GRANTED, Plaintiff's claims against the Defendants DISMISSED without prejudice, and this case DISMISSED.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).

Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. ANALYSIS

Defendants argue Plaintiff's claims are precluded by the doctrine of *res judicata*, and even if Plaintiff's claims are not precluded, Plaintiff failed to exhaust his administrative remedies. Each argument is addressed below.

### A. Res Judicata

Traditionally, the doctrine of *res judicata* controls the preclusive effect of previous federal court judgment. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *Res judicata*, or claim preclusion, will prevent a party from litigating a legal claim that was or could have been adjudicated previously while collateral estoppel, or issue preclusion, bars the relitigating of issues previously and actually adjudicated between the same parties. *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 939, 940 n. 13 (8th Cir. 2000). A dismissal for a failure to exhaust available administrative remedies is without prejudice. *Barbee v. Correctional Medical Services*, 394 Fed. Appx. 337, 338 (8th Cir. 2010). A dismissal without prejudice is not an adjudication on the merits, and therefore, generally does not have *res judicata* effect. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Defendants acknowledge it is possible Plaintiff could have exhausted all remedies after the dismissal of *Robinson I*, and that the Court must address the issue of exhaustion. (Doc. No. 17 at 5 n.2). Under these circumstances, *res judicata* does not bar Plaintiff's claims.

### B. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (*per curiam*).

Exhaustion under the PLRA is mandatory. *Bock,* 549 U.S. at 211. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.* Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

The grievance policy of the Arkansas Department of Correction in effect at the time of the alleged constitutional violations was Administrative Directive 14-16, and Plaintiff's allegations are governed by that Directive. (Doc. No. 16-1 at 1.) Pursuant to the Directive, an inmate is required to attempt informal resolution of a problem or complaint prior to filing a formal grievance. (*Id*. at 1-2.) This is accomplished by completing and submitting the Unit Level Grievance Form within fifteen days after the occurrence of the incident. (*Id*. at 5.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 5-6.) Following an attempt at informal resolution, an inmate may proceed by filing a formal grievance on the same Unit Level Grievance Form. (*Id*. at 8.) The warden or his designee must provide a written response within twenty working days of receipt. (*Id*. at 10.) If dissatisfied with the response, the inmate may appeal within five working days to the appropriate Chief Deputy/Deputy/Assistant Director. (Doc. No. 16-1 at 11.) The Chief Deputy/Deputy/Assistant Director must provide a written response within thirty working days. (*Id*. at 12.) "A written

decision or rejection of an appeal at this level is the end of the grievance process." (*Id*.) Administrative Directive 14-16 includes the following warning:

> Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC. Inmates must fully exhaust the grievance prior to filing a lawsuit. Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

(*Id*. at 4-5.)

Defendants assert Plaintiff did not exhaust any grievance pertaining to the claims in this lawsuit. (Doc. No. 17 at 5-7.) As evidence, they submitted the Declaration of Michelle Buterbaugh, ADC Medical Grievance Supervisor and custodian of medical grievance records. (Doc. No. 16-5.) According to Ms. Buterbaugh, Plaintiff submitted three formal medical grievances between the dates of April 20, 2018—the date of the alleged choking—and April 9, 2020—the date on which he filed this lawsuit—but failed to exhaust any of the three. (*Id*. at 1-2.) Defendants also provided the three grievances as evidence. (Doc. No. 16-4.)

Plaintiff filed grievance TU-18-00528 on June 9, 2018. (*Id*. at 6-8.) He complained that he was being retaliated against at the Tucker Unit for an incident at another unit, though he did not describe the incident. (*Id*. at 8.) The retaliation was in the form of mental health services and law library access having been denied for "at least 30 days now." (*Id*.) Grievance TU-18-00528 was denied as untimely. (*Id*. at 6.)

Plaintiff submitted grievance TU-18-00623 against a Mrs. Sanders in connection with the treatment—or lack of treatment—he was receiving for his anxiety. (*Id*. at 9-10.) He did not appeal the grievance. (Doc. No. 16-4 at 9-10.)

In Grievance CU-18-00441, Plaintiff described the alleged choking incident at issue in this case and identified the Defendants. (*Id*. at 4.) He wrote:

> On the 20th of April around 11:50 p.m. I went to nurse office to get my blood pressure checked. It was elevated again. Between 11:56 and 12:03 a.m. Ms. Wilson went behind a cubicle, she then came around with a telephone receiver with the cord plugged into it in her had. I was still sitting in the chair with the blood pressure machine beside it. She walked behind me, then she wrapped the cord around my neck twice and tightened it to apply pressure. I then stood up and made my way to apply pressure. I then stood up and made my way towards the video camera in the corner of the room. Ms. Merrill then attempted to block the view of the camera, so I leaned over further and waived my hands at the camera. After waiving my hands at the camera both nurses put their hands in the air as if they hadn't done anything. Once I sit back down I noticed there was a camera behind me also which captured everything on video.

(*Id*. at 4.) But Plaintiff's appeal of that grievance was rejected because it was untimely and because Plaintiff failed to submit Attachment I. (Doc. No. 16-4 at 1-5; Doc. No. 16-1 at 11.) A review of the grievance reflects that the health services response to unit level grievance was dated May 18, 2018. (Doc. No. 16-4 at 4.) The response reads, in relevant part:

> In your grievance you state on the 20th, you went to the infirmary to get your blood pressure checked. You state Ms. Wilson went behind a cubicle, then came around with a telephone receiver and cord, then wrapped the cord around your neck.
>
> Camera footage has been reviewed and correction [sic] action has been taken. Your grievance is found with merit but resolved.

(*Id*. at 2.)

Administrative Directive 14-16 defines an appeal as "a written request to a Chief Deputy/Deputy/Assistant Director for further action to resolve the issue or complaint in the grievance based upon the inmate's belief that the issue has not been resolved at the Unit level." (Doc. No. 16-1 at 2.) Plaintiff disagreed with the response to his until level grievance and sought to appeal the decision. (Doc. No. 16-4 at 2-3.) Specifically, in his appeal Plaintiff pointed out that the response completely failed to address Defendant Merrill's alleged involvement in the choking incident and that the matter is still not resolved regarding Defendant Wilson. (*Id*.) I also note that the response did not explain whether Plaintiff's medical needs had been addressed. If Plaintiff

failed to exhaust some but not all of the claims asserted in his complaint, only the unexhausted claims should be dismissed. *McQueen v. Wickliff*, 268 Fed. Appx. 494, 496 (8th Cir. 2008). Here, however, Plaintiff's untimely appeal bars his claims against both Defendants because neither claim is fully-exhausted. (Doc. No. 16-4 at 3-4.)

A review of the acknowledgement of grievance appeal reflects that Plaintiff's appeal was not received until July 30, 2018. (*Id*. at 1, 2, 4.) Plaintiff included the following note on his appeal acknowledging the appeal was late: "I did make the mistake of sending this to Ms. Dana Haynes. That is why it is late. Please excuse." (*Id*. at 3.) Further, Plaintiff's Response to the Defendants' Motion highlights his misunderstanding of the grievance process. In his Response, Plaintiff explained that he "had no knowledge of grievance procedure but made every possible attempt to fully exhaust." (Doc. No. 22 at 1.) He further urged that his lack of knowledge of the grievance procedure should be regarded as a special circumstance that existed to justify his failure to exhaust administrative remedies. (*Id*.)

The evidence shows Plaintiff failed to exhaust any grievance against the Defendants. He came close with Grievance CU-18-00441, but his appeal was denied as untimely and because Attachment I was not included. This result is harsh. But courts must dismiss a case when a Plaintiff failed to exhaust his available administrative remedies. *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858-59, 1862 (2016); *Porter v. Sturm,* 781 F.3d 448, 451-52 (8th Cir. 2015) (failure to exhaust where favorable finding on grievance not appealed). And courts do not have the authority to "engraft an unwritten 'special circumstances' exception into the PLRA's exhaustion requirement. The only limit to § 1997(e)(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862. While the grievance was found to have merit and was considered resolved, Plaintiff disagreed,

writing on his appeal that "[t]his matter is not resolved." I am not aware of any ADC requirement that a grievance resolved on the merits must be appealed—unless the inmate disagrees with the result and wants to pursue his administrative remedies further. (*See* Doc. No. 16-1.) It appears that is the case here. Plaintiff disagreed that Grievance CU-18-00441 had been resolved and continued with the grievance process, albeit he was late in doing so. Plaintiff has not alleged that the administrative remedies were unavailable to him (Doc. No. 2), but rather explained that his appeal was late because of his own mistake. Plaintiff failed to "complete the administrative review process in accordance with the applicable procedural rules" with respect to his claims against the Defendants. *Bock*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). Accordingly, Plaintiff's claims against Defendants Merrill and Wilson should be dismissed without prejudice.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.   The Motion for Summary Judgment filed by Defendants Merrill and Wilson; (Doc. No. 15) be GRANTED and Plaintiff's claims against these Defendants be dismissed without prejudice.

2.   This case be DISMISSED.

3.   The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 22nd of June 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE